

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00480-CR

THOMAS ALLEN HAMMER                                                    APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
TRIAL COURT NO. 1279124D

----------

## OPINION

----------

Upon Appellant Thomas Allen Hammer's plea of "not true" to the allegation of attempted burglary but "true but" to the allegation of possession of drug paraphernalia in the State's petition to proceed to adjudication, and after a hearing thereon, the trial court granted the State's petition, revoked Appellant's deferred adjudication community supervision, adjudicated his guilt of the offense of burglary of a habitation, and sentenced him to fifteen years' confinement. In his

sole issue, Appellant argues that his punishment was grossly disproportionate to the facts of the community supervision violations, contravening the constitutional prohibition against cruel and unusual punishment. Because we hold that the trial court did not err, we affirm the trial court's judgment.

**Brief Facts**

On July 8, 2013, Appellant pled guilty under a plea agreement to the offense of burglary of a habitation. The trial court placed him on deferred adjudication community supervision. Less than two weeks later, the State filed a petition to proceed to adjudication. The petition alleged that on July 16, 2013, Suzanne McKinney was at her home with her three children when she heard the doorbell ring. At the time the doorbell rang, McKinney was upstairs in her son's room, so she looked out the window and saw an Army green "vehicle, like an SUV, parked . . . to the side of the driveway, but in front of [her] property." She did not recognize the vehicle. McKinney saw a man, whom she later identified as Appellant, leave her front door, walk to the vehicle, and open the driver's side door.

McKinney further stated that she saw Appellant grab something from the glove box, look around as though to see if the coast was clear, and make his way back to her front door. McKinney went downstairs, saw Appellant through the muted glass portion of her front door, and heard "something going on with the lock." In an effort to scare Appellant, McKinney yelled, "Hey!" Appellant jumped up and stated that "he was looking for Brian." McKinney told Appellant to leave,

2

and he did. McKinney then went to the dining room window and saw Appellant "walk down the sidewalk, back down the driveway, back to his car." As soon as Appellant got to the vehicle, McKinney called 9-1-1 and gave police a description of the vehicle, a partial license plate number, and a description of Appellant.

About a mile from McKinney's residence, Keller Police Officer Darrell Potts stopped a vehicle matching the description of the SUV in McKinney's 9-1-1 call. Appellant was driving the vehicle, and he identified himself with his inmate card because he did not have a driver's license with him. After a brief exchange, Officer Potts conducted a pat-down. During the pat-down, Officer Potts found in Appellant's pocket a "small, probably about 4 1/2 inch jigsaw-looking blade that had been filed down to look like a key on one end and actually looked like a—a lock-pick rake that you would use . . . in a lock-picking." With Appellant's consent, Officer Potts searched the vehicle and found: (1) a crack pipe to the right of the steering wheel, somewhere in the center console area, and (2) tools used to pick locks—a "bent metal piece[,] . . . [a] screwdriver[,] and [a] sheet metal piece." The police arrested Appellant for driving with a suspended driver's license and possession of drug paraphernalia.

At the adjudication hearing, Appellant pled "true but" to the possession of drug paraphernalia allegation and "not true" to the attempted burglary of a habitation allegation. While Appellant testified that the crack pipe was in fact located inside the vehicle, he denied that it was his, testifying that it was his father's. He said that he was in McKinney's neighborhood because he got lost

3

while on his way to see his employer and that he had ended up on McKinney's street and was out of his vehicle because he was trying to connect his phone to the internet to obtain navigational aid. Appellant denied ever going to McKinney's door. He testified that the items found in his car and on his person were items used in connection with his employment as a photovoltaic (solar) engineer or technician. Officer Potts testified that when he asked Appellant where he was going, Appellant stated that he was looking for somewhere to eat and that he was lost.

Appellant also presented mitigating evidence at the hearing on health issues that he suffers from, including hepatitis C, Parkinson's disease, and a seizure disorder.

**Proportionality**

In his sole issue, Appellant argues that the punishment was grossly disproportionate to the facts of his community supervision violations, contravening the constitutional prohibition against cruel and unusual punishment. Although Appellant was not given the statutorily mandated opportunity for defendant allocution before the visiting trial judge imposed his sentence,[1] he was given the opportunity to argue the appropriate punishment. Additionally, the trial court inquired, after imposing sentence, "Is there anything further for today's proceeding?" Appellant did not raise this complaint at either time. But, as the

---

[1]*See* Tex. Code Crim. Proc. Ann. art. 42.07 (West 2006).

State points out, Appellant included this complaint in his motion for new trial, and he presented that motion to the trial court. He has therefore preserved this sentencing complaint.[2]

Burglary of a habitation is a second-degree felony.[3] The range of confinement is from two years' to twenty years' imprisonment.[4] Generally, punishment within the statutory limits is not excessive, cruel or unusual.[5] But a sentence can be within statutory limits and still violate the Eighth Amendment's prohibition against grossly disproportionate punishment.[6] In resolving an Eighth Amendment disproportionality complaint, we first compare the gravity of the offense to the severity of the sentence.[7] We evaluate the original offense, not community supervision violations, in making this comparison.[8] Appellant had a

---

[2]*See* Tex. R. App. P. 21.6, 33.1(a).

[3]Tex. Penal Code Ann. § 30.02(c)(2) (West 2011).

[4]*Id.* § 12.33(a).

[5]*Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); *Dale v. State*, 170 S.W.3d 797, 799 (Tex. App.—Fort Worth 2005, no pet.).

[6]U.S. Const. amend. VIII; *Solem v. Helm*, 463 U.S. 277, 290, 103 S. Ct. 3001, 3009–10 (1983).

[7]*McGruder v. Puckett*, 954 F.2d 313, 315 (5th Cir.), *cert. denied*, 506 U.S. 849 (1992); *Moore v. State*, 54 S.W.3d 529, 541 (Tex. App.—Fort Worth 2001, pet. ref'd) (applying the modified *Solem*/*McGruder* proportionality analysis); *see Solem*, 463 U.S. at 292, 103 S. Ct. at 3011.

[8]*Hulsey v. State*, No. 02-12-00205-CR, 2013 WL 627019, at *2 (Tex. App.—Fort Worth Feb. 21, 2013, pet. ref'd) (mem. op., not designated for

history of burglary, had four pending burglary cases, was on deferred adjudication community supervision for burglary, and violated the conditions of community supervision by attempting to commit a burglary of another home only eight days after being placed on deferred adjudication community supervision. Based on the above facts, Appellant has not shown that his fifteen-year sentence is disproportionate to the gravity of the offense he committed.[9] Because we resolve this threshold factor against Appellant, the analysis ends.[10]

Even if we had resolved the threshold factor in Appellant's favor, however, a *Solem* analysis (as modified by *McGruder*) would have required us to consider sentences imposed for the same crime in the same jurisdiction and in other jurisdictions.[11] Appellant offered no such evidence to the trial court during the adjudication hearing, nor did he submit any such evidence with his motion for new trial. Nothing in the record informs us of sentences imposed in this or other jurisdictions for burglary of a habitation committed by a person with a history similar to Appellant's.

---

publication); *Sullivan v. State*, 975 S.W.2d 755, 756 (Tex. App.—Corpus Christi 1998, no pet.); *see Moore*, 54 S.W.3d at 542 ("[T]he court initially made a threshold comparison of the gravity of *the offense* against the severity of the *sentence*.") (emphasis added) (citing *McGruder*, 954 F.2d at 316).

[9] *See Moore*, 54 S.W.3d at 542.

[10] *See id.*

[11] *Id. (*citing *Solem*, 463 U.S. at 291–92, 103 S. Ct. at 3010; *McGruder*, 954 F.2d at 316).

We consequently hold that nothing in the record shows that the fifteen-year sentence imposed in this case constitutes a grossly disproportionate sentence or cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States.[12]  We overrule Appellant's sole issue.

**Conclusion**

Having overruled Appellant's sole issue, we affirm the trial court's judgment.


/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and MEIER, JJ.

PUBLISH

DELIVERED:  March 26, 2015

---

[12]*See Jordan*, 495 S.W.2d at 952; *Moore*, 54 S.W.3d at 541–42 (citing *Solem*, 463 U.S. at 292, 103 S. Ct. at 3011, and *McGruder*, 954 F.2d at 316).